UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ALICE HOWELL, Independent Administrator ) <br> of the Estate of JUSTUS HOWELL, deceased ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> CITY OF ZION, a municipal corporation, ) <br> OFFICER ERIC HILL, (#47), ) <br> ) <br> Defendants. ) | No. 16-cv-03949 <br><br> Hon. Thomas M. Durkin |

**PLAINTIFF'S MOTION TO EXCLUDE**
**DEFENDANTS' EXPERT WITNESS, DR. PETER FINK**

Plaintiff ALICE HOWELL, by and through her attorneys, respectfully requests that this Court prohibit the Defendants' expert witness, Dr. Peter M. Fink, from testifying at trial pursuant to Rules 702 and 703 of the Federal Rules of Evidence, *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny.[1]

## BACKGROUND

This case concerns a 17-year-old African American boy, Justus Howell, who was unjustifiably shot twice in the back and killed by a Zion police officer, Defendant Eric Hill, on April 4, 2015. *See* Compl., Doc. 1, Apr. 1, 2016, at 2–3. In order to cover up this unjustified shooting, Hill falsely claims, contrary to video evidence, that Justus turned and pointed a gun at him. Defendants' entire case turns on this lie. Defendants attempt to justify Hill's manifestly unreasonable actions by dressing up his lie as expert opinion.

The Defendants retained psychiatrist Dr. Peter Fink as an expert and asked him two

---

[1] In the alternative, Plaintiff requests a *Daubert* hearing pursuant to Rule 104(a) before permitting Dr. Fink to testify at trial.

questions: (1) whether an individual with Justus Howell's mental health diagnoses and/or conditions would be motivated to challenge a police officer the way Hill describes Justus doing on April 4, 2015; and (2) whether Justus's mental health diagnoses and/or conditions would be a predictor of his future behavior and if so, what his future behavior would likely be. Ex. 1, at 1. Dr. Fink provided the defense with ample ammunition, answering both questions in the affirmative. *See* Ex. 1, at 1, 4.

Dr. Fink's proffered opinions have no place in this trial. His first opinion impermissibly invades the province of the jury, assumes that the ultimate fact is true, and employs flagrantly circular reasoning. Defendants direct Dr. Fink to assume that Hill's lie that Justus turned and pointed a gun at him is true in order to prove that Justus in fact pointed a gun at Hill. To make matters worse, the Defendants instruct Dr. Fink to draw upon inadmissible evidence of Justus's prior bad acts and character evidence to support Hill's lie, hoping to end-run the character evidence rule under the guise of expert opinion. However, Dr. Fink's expertise in psychiatry does not make him more competent than any other juror to determine whether Hill's claim that Justus turned and pointed a gun at him is a lie. Dr. Fink's second opinion—in essence, that Justus would never have amounted to anything in life—is also inadmissible. Having never examined Justus himself, Defendants seek to use Dr. Fink to parade a slew of inadmissible bad character and hearsay evidence before the jury in order to unfairly bias them against Justus and devalue his life.

Allowing Dr. Fink to testify would risk the jury giving ultimate deference to his testimony when it is entirely undeserved. The Court should deny Defendants' attempt to use Dr. Fink to unfairly stack this trial against the Plaintiff by precluding Dr. Fink from testifying at trial.

**GOVERNING LEGAL PRINCIPLES**

Expert testimony is admissible under Rule 702 of the Federal Rules of Evidence if the following conditions are satisfied: (1) the expert is qualified; (2) the testimony will assist the trier of fact to understand the evidence or determine a fact in issue; and (3) the methodology underlying the testimony is valid—*i.e.*, the testimony is based on sufficient facts or data, is the product of reliable principles and methods, and the expert has reliably applied these principles and methods to the facts of the case. Fed. R. Evid. 702; *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589 (1993); *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999) (extending *Daubert* to all expert testimony). Because they seek to admit the testimony, the Defendants bear the burden to demonstrate satisfaction of each of the Rule 702 factors. *Lewis v. CITGO Petroleum Corp.*, 561 F.3d 698, 705 (7th Cir. 2009).

While the Rule 702 inquiry is intended to be a "flexible" one, the trial court must act as a "gatekeeper" to ensure the relevance and reliability of the expert's conclusions, given that expert testimony must be based on more than "subjective belief or unsupported speculation." *See Daubert*, 509 U.S. at 591, 594–95. In its gatekeeping role, the court should test the expert's qualifications against each of his conclusions. *See Gayton v. McCoy*, 593 F.3d 610, 617 (7th Cir. 2010) ("[We ask] not whether an expert witness is qualified in general, but whether his qualifications provide a foundation for [him] to answer a specific question." (internal quotation marks and citation omitted)).

Rule 702 further requires that the expert's testimony "assist" the trier of fact. Fed. R. Evid. 702. An expert "must testify to something more than what is 'obvious to the layperson'" and does not provide assistance where the testimony encroaches on the competence of the jury.

3

*Dhillon v. Crown Control Corp.*, 269 F.3d 865, 869 (7th Cir. 2001) (citation omitted). The court must also ensure that expert testimony is supported by the data upon which it purports to rely. *See General Electric Co. v. Joiner*, 522 U.S. 136, 146 (1997) (asking whether there is "too great an analytical gap between the data and the opinion proffered"). When an expert's "opinion," is "full of assertion but empty of facts and reason," the court can properly bar such testimony. *Mid-State Fertilizer Co. v. Exch. Nat'l Bank of Chicago*, 877 F.2d 1333, 1339 (7th Cir. 1989). Finally, even if otherwise admissible, expert testimony should be excluded where "its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, [or] misleading the jury[.]" Fed. R. Evid. 403. Expert evidence is a powerful tool and has a high potential for misleading the jury. *Daubert*, 509 U.S. at 595.

**I.    Dr. Fink's First Opinion Is Inadmissible Under Rules 702 And 703.**

    **A. Defendants Cannot Direct Dr. Fink to Presume the Truth of the Most Highly Contested Fact in this Case in Order to Prove that the Fact is True.**

Despite clear video evidence to the contrary, Defendants instructed Dr. Fink to assume the ultimate disputed fact in this case—Hill's lie that Justus pointed a gun at him—and asked him whether Justus is the kind of kid who would do this, all in order to prove the fact that they just asked Dr. Fink to assume: that Justus, in fact, turned and pointed a gun at Defendant Hill.[2] In addition to the obvious circularity of Defendants' reasoning (Dr. Fink was asked to assume that Justus pointed a gun at Hill in order to prove that Justus pointed a gun at Hill), Defendants attempt to stamp Dr. Fink's expert imprimatur on the truth of that ultimate contested fact to mislead, unfairly prejudice, and invade the province of the jury. This is merely unsupported

---

2  Plaintiff counsel has been unable to identify a single instance in which a court has allowed an expert witness to assume the truth of a disputed fact in order to then prove the existence of that disputed fact. Such circular logic has never been countenanced by a federal court and should not be permitted here.

factual assumption dressed up as psychiatric opinion.

Although an expert's opinions may be based on assumptions, there must be some factual support for the opinions; otherwise, "they are by hypothesis unreliable and inadmissible." *Richman v. Sheahan*, 415 F. Supp. 2d 929, 942 (N.D. Ill. 2006). "There is a critical distinction between an expert testifying that a disputed fact actually occurred . . . and an expert giving an opinion based upon factual assumptions." *Id.*; *see also Elorac, Inc. v. Sanofi-Aventis Canada, Inc.*, No. 14 C 1859, 2017 WL 3592775, at *5 (N.D. Ill. Aug. 21, 2017). The former—which is the case here—is manifestly improper. *Id.* at 943.

Dr. Fink proposes to testify that the most disputed material fact—whether Justus pointed a gun at Defendant Hill—actually occurred. This is evident in statements made throughout his report. *See e.g.*, Ex. 1, at 3–4 (Justus "turned toward the officer with the gun in his hands"); *id.* at 4 ("*[T]urning toward the officer with the gun in his hand* was consistent with the pattern of behavior resulting from his inability to reason fluidly." (emphasis added)).

Defendants' sole relevant purpose for Dr. Fink's testimony is to prove that Justus turned and pointed a gun at Hill (the very fact that they direct Dr. Fink to assume). After assuming the dispositive fact (that Justus pointed a gun at Hill), Dr. Fink uses that assumption to conclude that Justus's behavior in that moment (pointing a gun at Defendant Hill) was consistent with his past behavior, which, according to Dr. Fink, is attributable to his mental health diagnoses. Defendants then seek to use Dr. Fink's opinion that Justus would have been motivated to challenge a police officer to prove the fact he initially assumed: that Justus pointed a gun at Defendant Hill.

*Richman* also supports exclusion because Dr. Fink's assumptions are contrary to the evidentiary record. 415 F. Supp. 2d at 942. Dr. Fink states that Justus turned toward Defendant

5

Hill with a gun as if it is a fact, but the video evidence contradicts this.

Furthermore, Dr. Fink's testimony neither helps the trier of fact understand the evidence nor determine a fact in issue. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591. Expert testimony is not helpful when specialized knowledge is unnecessary to determine the fact at issue. *Dhillon*, 269 F.3d at 869; *see also Schutt Mfg. Co. v. Riddell, Inc.*, 673 F.2d 202, 205 (7th Cir. 1982) (expert testimony is useless if "the subject matter as a whole is obvious to a layperson").

The Defendants are merely using Dr. Fink to invade the province of the jury. A substantial part of Dr. Fink's four-page report is rote recitation of Defendant Hill's version of the shooting. But that did not require application of his expertise. *See Gayton*, 593 F.3d at 617. Nor does the jury need a psychiatrist's help to determine that Hill is lying about Justus pointing a gun at him. Additionally, to the extent that Dr. Fink's report is based on his review of the shooting video, *see* Ex. 2, at 27:22–28:4, his testimony does not assist the jury because he is neither a video analyst expert nor do his psychiatric qualifications better equip him to assess whether Justus turned and pointed a gun at Defendant Hill. That is within the ken of ordinary people. Thus, Dr. Fink's first opinion must be excluded as failing Rule 702 and *Daubert*.

Finally, given Dr. Fink's improper assumptions, the circularity of his arguments, and the fact that his assumptions are contradicted by objective video, the risk of unfair prejudice from Dr. Fink's first opinion substantially outweighs any probative value it may have. Fed. R. Evid. 403. There is a substantial risk that, upon hearing Dr. Fink's testimony, the jury will think that an expert just gave Defendant Hill's account a "stamp of approval"—an undeserved and misleading imprimatur which will be nigh impossible to ignore.

### B. Dr. Fink's First Opinion Is Largely Comprised Of Impermissible Character Evidence And Must Be Excluded.

Defendants and Dr. Fink ask the jury to infer that because Justus purportedly had a propensity for oppositional behavior, he must have engaged in oppositional behavior when Hill shot and killed him. This is classic impermissible character evidence, in that it seeks to use evidence of Justus's character to prove that he acted in conformity therewith when he was killed by Defendant Hill. *See* Fed. R. Evid. 404(a), (b). Character evidence is admissible "only when its admission is supported by some propensity-free chain of reasoning." *United States v. Gomez*, 763 F.3d 845, 856 (7th Cir. 2014); *see also United States v. Lee*, 724 F.3d 968, 978 (7th Cir. 2013) ("When one looks beyond the purposes for which the evidence is being offered and considers what inferences the jury is being asked to draw from that evidence, and by what chain of logic, it will sometimes become clear . . . that despite the label, the jury is essentially being asked to rely on the evidence as proof of the defendant's propensity [to behave a certain way].").

Dr. Fink's opinion on question one violates the Seventh Circuit's clear instruction. His conclusion that "Justus Howell *because of his diagnoses and/or conditions* . . . would have been motivated to challenge a police officer," Ex. 1, at 1 (emphasis added), requires the jury believe that, on April 4, 2015, Justus "acted in accordance with [his] character or trait." Fed. R. Evid. 404(a). That is propensity reasoning. Dr. Fink's underlying conclusions pertaining to question one also fail the "propensity-free chain of reasoning" test. For example, Dr. Fink improperly assumed that Justus pointed a gun at Hill and then proclaimed that Justus's decision to do so "was *consistent with the pattern of behavior* resulting from" his deficit in fluid reasoning. Ex. 1, at 2-3 (emphasis added). Moreover, describing Justus's past behavior, time in a juvenile correctional setting, and "well-established" history of anti-authoritarian behavior only serves to

7

paint one picture: that Justus was a bad kid who had been in trouble before, so he was likely to have acted in conformity with that past behavior on the day that Hill killed him. But it is precisely this chain of reasoning that *Gomez* forbids.

Any reliance on the 1995 District Court opinion in *Bemben v. Hunt*, No. 93 C 509, 1995 WL 27223 (N.D. Ill. Jan. 23, 1995) would be misplaced.[3] In *Bemben*, the trial court allowed the admission of the plaintiff's psychiatric history, such as her admission to a psychiatric ward immediately after the accident and evidence of her unusual conversations with hospital personnel, as evidence of her state of mind at the time of the incident, not her propensity to act in conformity with her mental illnesses. *Id*. at *2. In contrast, Justus's state of mind is irrelevant to the reasonableness of Hill's decision to shoot Justus in the back.

Furthermore, to the extent that the Defendants claim Dr. Fink's opinion is not being offered as character evidence, opinion one is irrelevant as it then does not make any fact at issue more or less probable. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 591 ("Expert testimony which does not relate to any issue in the case is not relevant and, ergo, non-helpful."). Dr. Fink's opinion serves no purpose other than to try to prove the ultimate fact that Fink assumes—that Justus pointed a gun at Hill. Dr. Fink's opinion does not make this more or less probable *without* going through the propensity chain of reasoning.

### C. Dr. Fink's First Opinion Is Not The Product Of Reliable Principles Or Methods.

Rule 702(c) requires that an expert's testimony be the product of reliable principles and methods. Fed. R. Evid. 702(c). Dr. Fink's opinion does not meet this standard. Under *Daubert*,

---

[3] The Seventh Circuit distinguished inadmissible evidence of a person's character traits from permissible psychiatric evidence in *United States v. West*, 670 F.2d 675 (7th Cir. 1982), which was overruled on other grounds by *United States v. Green*, 258 F.3d 683 (7th Cir. 2001). The Seventh Circuit, in *West*, held that unlike "elements of one's disposition," such as Justus's character for peacefulness or violence, psychiatric evidence of a person's intelligence is not a character trait meant to be precluded by Rule 404(a). *Id*. at 682.

"courts must ensure that purportedly scientific testimony employs scientific methods to reach reliable conclusions, and by extension Rule 702 requires any other application of specialized knowledge to be professionally sound and reliable." *Huey v. United Parcel Serv., Inc.*, 165 F.3d 1084, 1087 (7th Cir. 1999) (citation omitted).

Dr. Fink's opinion is unreliable because he blindly accepts and recites both Defendant Hill's narrative[4] and the opinions of mental health professionals with whom he has never worked or even spoken.[5] First, Dr. Fink uncritically accepted Defendant Hill's lies and bases his entire opinion on those lies, notwithstanding video evidence to the contrary and Hill's powerful incentives to cover up the unreasonable nature of his shooting. His decision to rest his opinion on the unsupported word of the primary Defendant is not a reliable principle or method to employ, making his opinions the product of unreliable principles and methods. Fed. R. Evid. 702(c). Second, Dr. Fink's opinions are inextricably intertwined with the diagnoses made by other mental health professionals, whose methods and principles, and the reliability thereof, he cannot testify to. *Id.* Coupled with his willingness to opine on the mental health of someone he did not

---

4  Importantly, these are not even *opinions*. They are merely statements by Defendant Hill upon which Dr. Fink relied, about which Dr. Fink has no personal knowledge, and to which Dr. Fink should be prohibited from testifying. These statements are hearsay and do not meet any of the Rule 803 hearsay exceptions. Fed. R. Evid. 801, 803.

5  The sections of Dr. Fink's report which recite what the records state are also not opinions and are, therefore, inadmissible under Rule 703. Dr. Fink's expertise was not required to simply reiterate what was written in the medical records. Furthermore, Rule 703 prohibits their introduction into evidence because they are inadmissible under other rules of evidence and their probative value is outweighed by their prejudicial effect. The records are inadmissible because they contain multiple layers of hearsay and do not satisfy any of the 803 exceptions. Fed. R. Evid. 801, 803. Second, because the jury cannot go through a propensity-free chain of reasoning upon reading the records, there is an exceptionally high risk of prejudice and misleading the jurors, substantially outweighing any probative value they may hold. Fed. R. Evid. 403, 404(a). Plaintiff will more fully brief these objections to the introduction of the underlying records in its motions *in limine*.

personally examine,[6] Dr. Fink's report is neither professionally sound nor reliable.[7]

### D. Dr. Fink's First Opinion Is Not Based On Sufficient Facts Or Data, And Must Be Excluded Under Rule 702(b).

Dr. Fink's report is also flawed because he did not base his opinion and underlying conclusions on sufficient facts or data. Fed. R. Evid 702(b). The Seventh Circuit has explained that "[i]f experts cannot tie their assessment of data to known scientific conclusions, based on research and studies, then there is no comparison for the jury to evaluate and the experts' testimony is not helpful to the jury." *Porter v. Whitehall Laboratories*, 9 F.3d 607, 614 (7th Cir. 1993). Opinions which are based on insufficient facts or data are inadmissible "subjective belief[s] or unsupported speculation[s]," *Daubert*, 509 U.S. at 595, connected to the case by nothing more than the "*ipse dixit* of the expert," *Joiner*, 522 U.S. at 146. Such is the case here.

Dr. Fink's first opinion improperly relies on psychiatric articles which do not support his assertions.[8] He claims that "[o]ne of the genetic deficits [that individuals like Justus] are thought

---

6  In opining on Justus's mental health, Dr. Fink also violated a common tenet of psychiatric ethics, which prohibits psychiatrists from offering opinions on someone that they have not personally evaluated. *See* Am. Psychiatric Assoc., *The Principles of Medical Ethics* (2013 ed.), at 9 ("[I]t is unethical for a psychiatrist to offer a professional opinion unless he or she has conducted an examination."). Given that it is not the common practice in the profession offer an opinion without conducting an examination, Dr. Fink's opinion is not the product of reliable principles or methods. *See* Fed. R. Evid. 702(c).

7  Seventh Circuit case law supports excluding expert testimony which relies too heavily on the findings of other doctors for whose methods the expert cannot attest. *See C.W. ex rel. Wood v. Textron, Inc.*, 807 F.3d 827, 832 (7th Cir. 2015) (affirming the district court's exclusion of expert testimony when "to accept [the expert's] approach . . . one must accept both the scientific studies upon which [he] relied *and the care taken by the [other] doctors* who examined [the patients]," and the district court accepted neither) (emphasis added); *see also Walker v. Soo Line R. Co.*, 208 F.3d 581, 588–89 (7th Cir. 2000) (reversing district court's exclusion of expert testimony when the expert was the head of a diagnostic-evaluation team relying on the work of her *team members*, whose principles and methods she could verify and attest to, and when the expert also conducted "her own limited examination [of the plaintiff]").

8  This criticism is also true of Dr. Fink's second opinion. There, Dr. Fink relies on two inapplicable articles: (1) Rachel G. Klein, et al., *Clinical and Functional Outcome of Childhood Attention-Deficit/Hyperactivity Disorder 33 Years Later*, 69 Archives Gen. Psychiatry 1295 (2012); (2) Robert G. Voigt, et al., *Academic Achievement in Adults with a History of Childhood Attention-Deficit/Hyperactivity Disorder: A Population-Based Prospective Study*, 38 J. Developmental & Behavioral Pediatrics 1 (2017). *See* Ex. 1, at 4 n.11, 12. The Klein study is a 33-year follow-up of 135 adult white men who had ADHD in childhood. The child participants were specifically excluded if they suffered conduct disorder, meaning Justus, as an African-American and as someone who with a

to have may be similar or the same as that found in those susceptible to addiction patterns," Ex. 1, at 3. For support, he cites to an article about the neurocircuitry of addiction. *See* Ex. 1, at 3 n.7 (citing George F. Koob & Nora D. Volkow, *Neurocircuitry of addiction*, 35 Neuropharmacology Reviews 217 (2010)). The article has absolutely nothing to do with the similarity in genetic deficits between individuals with ADHD, ODD, or CD diagnoses and those suffering from addiction. *See* Koob & Volkow, at 225-27. It was improper and misleading for Dr. Fink to cite to this article to support his statement. Moreover, Dr. Fink's inability to tie his assessment of Justus to known psychiatric conclusions, "based on research and studies," fails to provide a comparison for the jury to evaluate, rendering his testimony unhelpful to the jury and inadmissible.

## II. Dr. Fink's Second Opinion Must Also Be Excluded For Many Of The Reasons As His First Opinion.

Dr. Fink's second opinion—that "Justus's mental health diagnoses and/or conditions would be a predictor of his future behavior" and "that Justus's behavior and overall life adjustment would have been maladaptive"—suffers from many of the fatal flaws that make his first opinion inadmissible. Ex. 1, at 4. Dr. Fink's second opinion is not based on sufficient facts or data, especially in his reliance on the examinations and diagnoses of other professionals; contains substantial analytical gaps between the data and the proffered opinion; is offered as

---

CD diagnosis, would have been ineligible to participate in this study. The Klein article therefore does not "fit" this case. *See Daubert*, 509 U.S. 592–93 (the admissibility of expert testimony relying on scientific reasoning or methodology depends on "whether . . . th[e] reasoning or methodology properly can be applied to the facts in issue"); *United States v. White Horse*, 316 F.3d 769, 775 (8th Cir. 2003) (excluding from evidence a psychological test that measured sexual interest in children when the test excluded incest-only cases in its predictive equations "because incest offenders often act for reasons other than sexual interest.

Similarly, the Voigt article does not fit this case. It studied only people who lived in Rochester, MN. Rochester is a small town in southeast Minnesota, its permanent population is very racially homogenous, and it is an affluent city with superior access to medical and psychiatric resources given that the Mayo Clinic is located there. Thus, this sample is neither representative of nor applicable to Justus's upbringing. Furthermore, the Voigt article analyzed only educational attainment of children with ADHD—not likelihood of the subject to suffer adult-onset depression, develop substance use disorders, fail vocationally, and/or interpersonally, unlike Dr. Fink misleadingly suggests in his placement of the citation. Ex. 1, at 4. Thus, it cannot be relied upon to support his statement.

impermissible character evidence; and seeks to unfairly bias the jury against Justus.

    A. **Dr. Fink's Second Opinion Is Not Based On Sufficient Facts Or Data, Failing Rule 702(b), And Fatally Suffers Substantial *Joiner* Problems.**

Dr. Fink's opinions must be based on facts and data, something sorely lacking in Dr. Fink's opinion in response to question two and leaving great analytical gaps between the data and the proffered opinion. Fed. R. Evid. 702(b); *Joiner*, 522 U.S. at 146.

First, Dr. Fink's second opinion is entirely and inextricably dependent on the examinations and diagnoses of other mental health professionals. Again, this violates the ethics of psychiatry. *See supra*, at 10 n.6. Additionally, the Seventh Circuit favors exclusion when expert testimony relies too heavily on the findings of other doctors to whose methods the expert cannot attest. *See supra*, at 10 n.7.

Second, as explained *supra*, the studies upon which Dr. Fink relies when he asserts that individuals like Justus, as adults, are more likely to suffer depression, develop substance use disorders, and fail to attain success in a number of areas, Ex. 1, at 4 & n.11–13, do not adequately support Dr. Fink's conclusion. *See supra*, at 10 n.8.

Third, Dr. Fink claims that Justus's mental health diagnoses would have predicted his future behavior because "individuals with conduct disorder [CD] have a high probability to go on to be antisocial persons." Ex. 1, at 4. He then claims that, "[g]iven the arc of Justus's behavior at the time of his death, it is highly probable that he would have engaged in more violent acts, been the target of violent acts, and would have a high probability of repeated incarceration as an adult." *Id*. While the article he cites for the first conclusion supports the proposition that CD is a strong predictor for antisocial personality disorder (ASPD), it does not support the second prediction. *See* Ole J. Storebø, *The Association Between ADHD and Antisocial Personality*

12

*Disorder (ASPD)*, 20 J. Attention Disorders 815, 816 (2016).

An ASPD diagnosis requires that an individual satisfy three or more of the following criteria: (1) failure to conform to social norms; (2) deceitfulness; (3) impulsivity; (4) irritability and aggressiveness; (5) reckless disregard for the safety of self or others; (6) consistent irresponsibility; (7) lack of remorse. *See* DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS [hereinafter DSM-V], § 301.7 (Am. Psychiatric Ass'n 5th ed.) (2013). Essentially, if Justus later developed ASPD, which is a premature assumption to make, it could have manifested by lying to his family (deceitfulness), failing to plan ahead (impulsivity), and an inability to apologize (lack of remorse). It may not have manifested in the apocalyptic manner in which Dr. Fink predicts (*i.e.*, violence, being a target of violence, and repeat incarceration). Furthermore, Justus may not have developed ASPD at all. Dr. Fink's conclusion requires that, had Justus lived, all variables would have remained constant *and* that Justus develop ASPD. Thus, it is too large an analytical leap from Justus's CD diagnosis to Dr. Fink's prediction.

Fourth, Dr. Fink fails to cite any support for his assertion that the trajectory of Justus's life at the time of his death made it highly probable that he would have suffered a bleak fate. His failure to cite additional data favors exclusion under *Porter*. 9 F.3d at 614 ("If experts cannot tie their assessment of data to known scientific conclusions, based on research and studies, then there is no comparison for the jury to evaluate[.]").

Fifth, Dr. Fink makes a couple of statements which are devoid of any analysis connecting them to this case, a *Joiner* issue. He should be prevented from testifying to these generalizations. *Wood*, 807 F.3d at 831 (affirming the district court's exclusion of three experts' testimony for their failure to "connect the dots" between the scientific studies analyzed and the opinions

13

proffered). Specifically, Dr. Fink opined that "[t]he less adaptive one is in childhood, the lower the likelihood of successful adult life adaptation" and "[r]isk increases with denial of having an underlying mental disorder or condition, and with refusal of appropriate treatment and supports." Ex. 1, at 4. While this may be true, Dr. Fink did not connect these statements to Justus. He provides no evidence, for example, that Justus denied having an underlying mental disorder.[9] Dr. Fink should be barred from testifying to any generalized statements in his report.

### B. Dr. Fink's Second Opinion Necessarily Leads The Jury To Make Impermissible Character Inferences.

While the Defendants may claim that Dr. Fink's second opinion is not impermissible character evidence, the jury will be unable to hear the evidence and go through a propensity-free chain of reasoning. Fed. R. Evid. 404(a). The entirety of Dr. Fink's response to question two is character evidence is based on the following analysis: Justus was a bad kid in the past (inferred from the list of behaviors included in Dr. Fink's report), so he would likely continue to be bad in the future. Ex. 1, at 4 ("[M]y opinion is that Justus [sic] behavior and overall life adjustment would have been maladaptive."). This is an impermissible inference to ask the jury to make.

### C. The Risk of Unfair Prejudice From Dr. Fink's Second Opinion Substantially Outweighs Any Probative Value.

Even if Dr. Fink's second opinion and underlying conclusions were admissible under Rule 702, he should be prohibited from testifying because the risk of undue prejudice outweighs the little probative value the opinion may have. Fed. R. Evid. 403, 703. Defendants' use of Dr. Fink is little more than a thinly veiled attempt to introduce inadmissible bad act, character, and hearsay evidence to unfairly bias the jury against Justus, especially considering that the

---

9 Dr. Fink's response to question one contains the same flaw. Specifically, he wrote that "[f]luid reasoning, in childhood, accurately predicts performance in school, university, and cognitively demanding occupations." Ex. 1, at 3 & n.9. He, again, failed to tie this generalization to the issue of liability (given its placement in opinion one), as it is entirely irrelevant to whether Justus pointed a gun at Defendant Hill.

14

underlying evidence which Dr. Fink relied upon is itself inadmissible under Rule 703.[10] The immense Rule 403 concerns—unfair prejudice, confusion of the issues, and risk of misleading the jury—that would accrue from Dr. Fink's recitation of Justus's purported bad acts and mental health diagnoses (made by others) substantially outweigh any minimal relevance it may have to the issue of damages.

## CONCLUSION

Plaintiff Alice Howell respectfully requests that the Court enter an Order barring Dr. Peter Fink from testifying or otherwise offering any opinion at this trial.

Dated: February 1, 2018

Respectfully submitted,

By: /s/ Andrew Stroth
One of the attorneys for the Plaintiff

Carlton Odim
Odim Law Offices
225 West Washington Street
Suite 2200
Chicago, IL 60606
Tel: (312) 578-9390
Fax: (312) 924-0201
carlton@odimlawoffices.com

Andrew M. Stroth
Action Injury Law Group, LLC
191 North Wacker Drive
Suite 2300
Chicago, IL 60606
Tel: (312) 771-2444
Fax: (312) 641-6866
astroth@actioninjurylawgroup.com

Craig B. Futterman
Isabella Nascimento, Senior Law Student
Jeremy Chen, Senior Law Student
Andrew Sowle, Senior Law Student
Edwin F. Mandel Legal Aid Clinic
University of Chicago Law School
6020 South University Avenue
Chicago, IL 60637
Tel: (773) 702-9611
Fax: (773) 702-2063
futterman@uchicago.edu

---

10 As proponents of the evidence, it is Defendants' burden to demonstrate that Dr. Fink's opinion satisfies Rule 702, *see Lewis*, 561 F.2d at 705, and the Rule 703 balancing test, *see* Fed. R. Evid. 703.

## CERTIFICATE OF SERVICE

I hereby certify that on February 1, 2018, I electronically filed Plaintiff's Memorandum of Law in Support of Motion *In Limine* to Exclude Defendants' Expert Witness, Peter Fink, with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

>Thomas G. DiCianni
>Ancel, Glick, Diamond, Bush, DiCianni, & Krafthefer, P.C.
>140 South Dearborn Street, Sixth Floor
>Chicago, IL 60603
>Tel: (312) 782-7606
>Fax: (312) 782-0943
>tdicianni@ancelglick.com

Dated: February 1, 2018                            Respectfully submitted,

                                                      By:    /s/ Andrew Stroth_____
                                                         One of the attorneys for the Plaintiff

                                                         Andrew M. Stroth
                                                         Action Injury Law Group, LLC
                                                         191 North Wacker Drive, Suite 2300
                                                         Chicago, IL 60606
                                                         Tel: (312) 771-2444
                                                         Fax: (312) 641-6866
                                                         astroth@actioninjurylawgroup.com